# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### CEDAR RAPIDS DIVISION

KAREN S. TIGHE,

        Plaintiff,

vs.

JO ANNE B. BARNHART,
Commissioner of Social Security,

        Defendant.

No. C04-0158

**ORDER**

---

This matter comes before the court pursuant to briefs on the merits of this application for disability insurance benefits. On February 23, 2005, the parties consented this matter to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636 (docket number 8). The final decision of the Commissioner of Social Security is affirmed and this matter is dismissed.

## I.  PROCEDURAL BACKGROUND

Plaintiff Karen S. Tighe applied for Title II Social Security benefits and Title XVI supplemental security income benefits on November 14, 2001, alleging an inability to work since November 14, 2000, due to recurrent respiratory problems, asthma, and allergies. Ms. Tighe's application was originally denied. It was also denied on reconsideration. A hearing before Administrative Law Judge (ALJ) John E. Sandbothe was held on March 25, 2004. The ALJ denied Ms. Tighe's appeal in a decision dated July 2, 2004. The Appeals Council denied Ms. Tighe's request for review on September 21, 2004. This action for judicial review was filed on November 17, 2004.

## II. FACTUAL BACKGROUND

Ms. Tighe's relevant medical history is set forth below:

| DATE | MEDICAL PROVIDER | DIAGNOSIS, PROCEDURE, TREATMENT, FINDINGS, NOTES, ETC. |
|---|---|---|
| 1978 | Unknown | Gallbladder surgery. Removal of nonmalignant tumor from small bowel. (Tr. 141). |
| 1980 | Unknown | Abdominal wall hernia/adhesions. Ventral mesh placed in abdominal wall. (Tr. 141). |
| 1995 | Unknown | Tubing removed from abdomen. Accidentally left in during 1985 surgery. (Tr. 148). |
| 4.6.98 | Mercy Medical Center—Dr. D.L. Roberson | Chest PA and Lateral exams performed; compared with tests performed 7.24.95. Pulmonary vessels deemed normal, interstitial changes unchanged since '95, no acute infiltrates seen. Impression: chronic interstitial change. No acute disease. (Tr. 146). |
| 4.6.98 | Dr. Kenneth Cearlock | Treated for recurrent cough; has persisted for six months. No shortness of breath, wheezing. No fever or chills. Continues to smoke one pack of cigarettes per day. TM's clear bilaterally. Nose patent. Turbinates enlarged, erythematous. Throat—posterior pharynx reddened. Neck supple, shotty nodes. Heart normal. Diagnosed with chronic cough. Proscribed Prednisone and Zyban. (Tr. 237). |
| 4.10.98 | Dr. Kenneth Cearlock | Treated for green nasal discharge. Proscribed Zithromax. (Tr. 236). |
| 6.8.98 | Dr. Kenneth Cearlock | Complained of occipital discomfort for past three weeks. No particular injury. Possibly linked to fall one year prior. Neck supple. No spinal pain. Tender at occipital nerve notch. No sinus drainage. Diagnosed with occipital neuritis or neuralgia. Proscribed Lodine. (Tr. 236). |

| DATE | MEDICAL PROVIDER | DIAGNOSIS, PROCEDURE, TREATMENT, FINDINGS, NOTES, ETC. |
|---|---|---|
| 6.26.98 | Dr. Kenneth Cearlock | Treated for cough, congestion, sore throat, post nasal drainage. Throat red. Nasal mucosa erythematous. Abdomen negative. Diagnosed with bronchitis. Proscribed Amoxicillin, Prednisone. Also treated for headaches. No change in neuro exam. (Tr. 234). |
| 6.30.98 | Dr. Kenneth Cearlock | Continued treatment of headaches. C-spines and shoulder films entirely normal. Muscular cause suspected. (Tr. 234). |
| 7.10.98 | Dr. Kenneth Cearlock | Symptoms from 6.26 persist. TM's full of fluid. Nose patent. Throat—posterior pharynx red. Petechiae in soft palate. Neck is supple. Very large cervical nodes. Diminished breath sounds. Heart regular rate and rhythm. Diagnosed with continued bronchitis; possible lingering pneumonia. Proscribed Zithromax, Prednisone. (Tr. 234). |
| 7.20.98 | Dr. Kenneth Cearlock | Treated for persistent sore throat after Rocephin shot wore off. Continuing chest tightness, difficulty swallowing. Green nasal discharge. Afebrile. No lymphadenopathy. Throat red. Nares inflamed. Abdomen negative. Diagnosed with pharyngitis; possible resistant strain of bacteria. Proscribed Ceftin. Told to discontinue Prednisone. (Tr. 233). |
| 8.6.98 | Dr. Kenneth Cearlock | Treated for recurrent cough; resistant to several strains of antibiotics. Chronic bronchitis from smoking. (Tr. 233). |
| 5.8.99 | Mercy Medical Center—Dr. Stephen L. Runde | Treated for redness and mattering of right eye. Nose and throat clear, except for subtle crusting of nares. Gentamicin eye drops prescribed. (Tr. 177). |
| 5.21.99 | Dr. Kenneth Cearlock | Treated for persistent ear drainage, nasal irritation/drainage, cough. Still smoking. Afebrile; no lymphadenopathy. Nasal mucosa erythematous. Posterior pharynx red, but eyes ok. Swollen left year canal. Diagnosed with otitis externa. Proscribed Cephalexin. (Tr. 232). |

| DATE | MEDICAL PROVIDER | DIAGNOSIS, PROCEDURE, TREATMENT, FINDINGS, NOTES, ETC. |
|---|---|---|
| 5.22.99 | Mercy Medical Center—Dr. William E. Moothart | Treated for left ear pain that was preventing sleep. Was seen by Dr. Cearlock on 5.21.99; diagnosed with external otitis; prescribed Cephalexin and asacol otic solution. Wick was placed in ear for 72 hours. Otic Cortisporin suspension drops and Lortab prescribed. (Tr. 143–44). |
| 5.24.99 | Dr. Kenneth Cearlock | Follow-up to Mercy visit. Prescription changed to Cefzil; ear wicks replaced. (Tr. 232). |
| 5.25.99 | Dr. Kenneth Cearlock | Treated for vomiting. Suspected cause is Lortab. Told to decrease. (Tr. 232). |
| 8.14.99 | Mercy Medical Center—Dr. Robert Marseille | Treated for dry nose, occasional nose bleeds, puffiness, soreness around base of nose. Sinuses not tender. Some erythema and swelling at base of nose; no crusting. Oropharynx slightly erythematous; no exudate or drainage. No lymphadenopathy. Neck supple. Prescribed Augmentin and Nasonex. (Tr. 177). |
| 8.16.99 | Dr. Kenneth Cearlock | Follow-up from visit to Mercy. Treated for recurrent nose congestion, insomnia, depression. Anxiety symptoms such as chest pain, shortness of breath not observed. Slight fluid, redness behind right eye. Nose patent. Turbinates enlarged, erythematous, swollen. Neck supple without nodes. Chest is clear. Heart rate is regular. Diagnosed with secondary yeast infection in nasal area and depression. Proscribed Nystatin, Augmentin, Nasonex, and Trazodone. (Tr. 231). |
| 9.8.99 | Dr. Kenneth Cearlock | Increased Trazodone. (Tr. 231). |
| 9.20.99 | Dr. Kenneth Cearlock | Complained of sinus infection. Proscribed Augmentin. (Tr. 231). |

| DATE | MEDICAL PROVIDER | DIAGNOSIS, PROCEDURE, TREATMENT, FINDINGS, NOTES, ETC. |
|---|---|---|
| 10.18.99 | Dr. Kenneth Cearlock | Treated for continual nasal crusting and congestion. Symptoms clear up with antibiotic treatment, then come back. Continual crusted drainage from left nostril and occasionally ears. Inflammation of nasal passages. TMs ok. Posterior pharynx minimally red. Lungs clear. No lymphadenopathy. Diagnosed with purulent rhinitis, sinusitis. Proscribed Nasacort and Cephalexin. (Tr. 230). |
| 11.9.99 | Dr. Kenneth Cearlock | Treated for recurrent nasal crusting five days after completing course of antibiotics. Diagnosed with purulent rhinitis. Proscribed Augmentin. (Tr. 230). |
| 11.10.99 | Dr. Kenneth Cearlock | Nose culture revealed many colonies of staph aureus. Augmentin continued. (Tr. 230). |
| 11.11.99 | Dr. Kenneth Cearlock | Treated for recurrent staph infection in nose. Augmentin proscribed for one month. (Tr. 228). |
| 11.24.99 | PCI—Dr. James R. Flynn | Treated for recurrent episodes of crusting in nose. Examination revealed pus in nose and nasopharynx; ongoing sinusitis. Told to continue Augmentin. (Tr. 163). |
| 12.10.99 | Dr. Kenneth Cearlock | Checked intermittent navel drainage for signs of soft tissue infection. (Tr. 228). |
| 12.10.99 | PCI—Dr. James R. Flynn | CT scan perfectly normal. Chronic infection ruled out. Problems attributed to allergies. (Tr. 160). |
| 12.14.99 | Dr. Kenneth Cearlock | Follow-up from visit with Dr. Flynn. Slight erythema in posterior pharynx. No nodes. Neck supple. Lungs clear. Abdomen has a little erythema left of umbilicus. No sign of abscess or mass in abdomen. No organomegaly, guarding or rebound. No other signs of nodes or erythema in the abdomen area. Didn't think soft tissue infection causing sinus infection. (Tr. 228). |

| DATE | MEDICAL PROVIDER | DIAGNOSIS, PROCEDURE, TREATMENT, FINDINGS, NOTES, ETC. |
|---|---|---|
| 12.19–20.99 | Mercy Medical Center—Drs. David R. Kobliska and Steven H. Griffith | Treated for fever, aching, and chills. Diagnosed with bronchitis with bronchospasm, chronic sinusitis, tobacco use, and history of staphylococcal infections. Prescribed Ceftin, Tylenol Extra Strength, and ibuprofen. (Tr. 147). Patient told she must stop smoking. (Tr. 151). |
| 12.19.99 | Mercy Medical Center—Dr. William Scheible | Chest PA and Lateral exams performed; compared with tests performed 4.6.98. Interstitial markings noted as prominent, but probably unchanged given different radiographic technique. Heart normal size. No hilar or mediastinal mass appreciated. No acute findings, but some form of chronic interstitial disease suspected. (Tr. 153). |
| 12.23.99 | Dr. Kenneth Cearlock | Treated for continuing shortness of breath, cough. No lymphadenopathy. Nose bleeds continue. Diffuse end expiratory wheezes and rhonchi. Heart and abdomen negative. No edema. Given Albuterol treatment. Diagnosed with bronchitis or pneumonitis with bronchospasm. Proscribed Prednisone. (Tr. 226). |
| 1.13.00 | Dr. Kenneth Cearlock | Treated for swollen glands and some sinus drainage. Proscribed Augmentin. (Tr. 226). |
| 1.25.00 | Dr. Kenneth Cearlock | Treated for recurrent nasal congestion, pressure, and discharge. Symptoms decrease with Augmentin. (Tr. 226). |
| 2.3.00 | PCI—Dr. James R. Flynn | Treated for facial swelling and pain. Exam revealed only edema of nasal mucosa. Problems attributed to allergies. Steroid sinus spray recommended. (Tr. 159). |
| 3.6.00 | Dr. Kenneth Cearlock | Treated for continuing chest pressure, shortness of breath, but no fever or chills. Heart exam unremarkable, although soft systolic murmur over aortic area, radiating slightly into the precordium area. Lung fields clear. (Tr. 225). |

| DATE | MEDICAL PROVIDER | DIAGNOSIS, PROCEDURE, TREATMENT, FINDINGS, NOTES, ETC. |
|---|---|---|
| 3.7.00 | Mercy Medical Center—Dr. Jason T. Tauke | Treadmill exercise test performed to evaluate chest pressure. Baseline electrocardiogram indicated normal sinus rhythm within normal limits. No hemodynamically significant arrhythmias observed with exercise. Impression: electrocardiographic evidence of ischemia at attained level of stress accompanied by exertional chest pressure and significant dyspnea at low level of exercise. (Tr. 173). |
| 3.9.00 | Mercy Medical Center—Dr. Jason T. Tauke | Continuation of 3.7 test. Chest pain evaluation performed. Heart perfusion imaging performed. Impression: myocardial perfusion imaging normal; estimated ejection fraction 83%. (Tr. 170). |
| 5.31.00 | Dr. Kenneth Cearlock | Treated for continuing allergy symptoms; swollen eyes. Suggested seeing Dr. Zeaske. (Tr. 225). |
| 6.3.00 | Mercy Medical Center—Dr. Tony A. Myers | Treated for bilateral eye burning and mattering every morning for previous month. Diagnosed as allergic conjunctivitis. Proscribed Gentamicin eye drops and Claritin. Recommended seeing allergist. (Tr. 176). |
| 6.7.00 | Mercy Medical Center—Dr. E.E. Stone | Head w/o contrast CT performed. Impression: no acute abnormalities; small, 8mm low density mass in right cerebellopontine angle; may represent small epidermoid, but is unchanged from 12.24.96. (Tr. 168). |
| 6.7.00 | Dr. Kenneth Cearlock | Treated for blurred vision, trouble focusing and seeing out of left eye. Complained of intermittent dizziness, spinning sensation, nausea, and left-side weakness. Head CT negative. (Tr. 224). |
| 6.13.00 | Mercy Medical Center—Dr. B.M. Berens | Bilateral carotid ultrasound performed. Impression: unremarkable bilateral carotid ultrasound; antegrade flow involving both vertebral arteries. (Tr. 165). |
| 6.16.00 | Dr. Kenneth Cearlock | Echocardiogram showed mild obstructive hypertrophic cardiomyopathy. (Tr. 224). |
| 6.19.00 | Dr. Kenneth Cearlock | Called back to say she's doing well; not yet gone back to work. (Tr. 223). |

| DATE | MEDICAL PROVIDER | DIAGNOSIS, PROCEDURE, TREATMENT, FINDINGS, NOTES, ETC. |
|------|------------------|--------------------------------------------------------|
| 6.20.00 | Dr. Kenneth Cearlock | Condition still good, although allergy symptoms continue. Examination showed neck supple, lungs clear, heart regular, abdomen soft, extremities warm and dry. Diagnosed allergic rhinitis and conjunctivitis. Discussed smoking cessation at length; said she'll try very hard to quit. (Tr. 223). |
| 6.30.00 | Office of Dr. Richard L. Zeaske (allergist)— Dr. Tucker-Sanfelippo | Physical examination revealed slight retraction of tympanic membrane on left with diminished light reflex on the right. Nose was "absolutely unremarkable." Septum was midline and there was no nasal crease, nor any turbinate or mucosal edema. Lungs were clear anteriorly and posteriorly. Pulmonary function studies performed because of smoking habit. Results quite good for smoker. Skin tests were entirely negative. Intradermal tests revealed a 4+ reaction to ragweed and a very mild reaction to mite and cat dander. Recommendations were to bathe and/or wash hair before bed and use a nasal steroid and antihistamine during ragweed season. Quantitative immunoglobulins ordered because of recurrent staphylococcal infections to determine if hyper-IgE syndrome, or Job's Syndrome, present. Pneumovax and flu shots suggested. (Tr. 211–12). |
| 10.18.00 | MercyCare North—Dr. Andrew Patterson | Treated for irritated right eye. Nares and oropharynx deemed normal. Garamycin ophthalmic drops prescribed. (Tr. 175). |
| 10.23.00 | MercyCare North—Dr. Stephen Runde | Treated for continuing eye irritation and periodic "sharp twinges of pain in the right temple area." Ear, nose, and throat all clear. TobraDex drops prescribed; good hand washing stressed. (Tr. 175). |

| DATE | MEDICAL PROVIDER | DIAGNOSIS, PROCEDURE, TREATMENT, FINDINGS, NOTES, ETC. |
|---|---|---|
| 12.18.00 | Dr. Kenneth Cearlock | Treated for chest tightness, congestion, ST, choking feeling, and cough. Muscle aches observed; no high fever. No nodes. Throat injected. Both TM's slightly red. Nasal mucosa looks "pretty good." Neck supple. Lung fields clear, but a congested cough. Diagnosed as bronchitis. Proscribed Cefzil, Cephalexin, continue course of Tx, and Robitussin. (Tr. 222). |
| 1.17.01 | Dr. Kenneth Cearlock | Wanted to start taking Tranxene again; didn't like Xanax; didn't think it worked as well. Restarted Tranxene. (Tr. 222). |
| 2.25.01 | MercyCare North—Dr. Jennifer Carney | Treated for sore throat, ear pressure, congestion, drainage, and slight eye drainage. No acute distress observed; afebrile. Throat had clear rhinorrhea. Oropharynx unremarkable. Neck supple. Lungs clear. Prescribed Amoxicillin. (Tr. 175). |
| 2.27.01 | Dr. Kenneth Cearlock | Visited MercyCare North and was proscribed Amoxicillin. Treated for continuing thick green nasal drainage and sinus pressure. Saw no improvement with Amoxicillin. TM's clear bilaterally. Nose patent, turbinates red w/ thick white drainage. Sinuses tender. Throat clear. Neck supple w/ shotty nodes. Chest clear. Diagnosed with sinusitis, conjunctivitis. (Tr. 222). |
| 3.2.01 | Dr. Kenneth Cearlock | Treated for continuing stuffy, red eyes. Proscribed Levaquin, but not helping. Suggested Sudafed. (Tr. 221). |
| 3.5.01 | Dr. Richard L. Zeaske (allergist) | Treated for itchy eyes, cough, and chest pressure. Impression: allergic rhinitis/conjunctivitis; persistent cough. (Tr. 208–09). |

| DATE | MEDICAL PROVIDER | DIAGNOSIS, PROCEDURE, TREATMENT, FINDINGS, NOTES, ETC. |
|---|---|---|
| 3.5.01 | Erskine Diagnostic Center | Referred by Dr. Zeaske for Chest PA and Lateral exam for pneumonia-like symptoms. Mild interstitial prominence manifested as peribronchial cuffing observed. No dense consolidation or pleural effusion seen. Normal lung expansion observed. Cardiac silhouette and pulmonary vascularity appeared normal. No acute infiltrates seen. (Tr. 207). |
| 5.7.01 | Dr. Richard L. Zeaske (allergist) | Treated for cough, wheezing, chest pressure, and shortness of breath. Prescribed Flovent. (Tr. 204–05). |
| 5.7.01 | Erskine Diagnostic Center—Dr. Ronald R. Gambach | Chest PA and lateral exam performed. No acute chest disease observed. (Tr. 206). |

| DATE | MEDICAL PROVIDER | DIAGNOSIS, PROCEDURE, TREATMENT, FINDINGS, NOTES, ETC. |
|---|---|---|
| 5.18.01 | Internists, P.C.—Dr. Darrell Dennis | Referred by Dr. Zeaske for further evaluation and management of obstructive airway disease. Pulmonary history remarkable for thirty year smoking habit and potential occupational exposure. Obstructive airway disease complicated by recurrent bouts of bronchitis and pneumonia beginning in 1999. No documented bronchiectasis, thromboembolic pulmonary disease, pleural disease, pneumothoraces, TB, or unusual pulmonary infections. Cardiovascular history remarkable for history of hypertension without history of documented atherosclerotic coronary artery disease, MI, valvular heart disease, cardiomyopathy, or significant cardiac dysrhythmias. Atopic history remarkable for history of urticaria, allergic rhinitis, intermittent sinusitis, and allergic conjunctivitis. No history of documented eczema, dermatitis, angioedema nasal polyps, or Aspirin sensitivity. Pulmonary symptoms problematic since pneumonia in 1999, but especially so over past several weeks. Symptoms include dyspnea on exertion such that unable to walk more than one to three blocks or up one flight of steps without experiencing significant shortness of breath. Also experienced shortness of breath at rest. Intermittent problems with chest congestion, chest tightness, wheezing and cough associated with minimal sputum production without purulent sputum production, hemoptysis, pleuritic chest pain, fevers, chills, or rigors. Pulmonary symptoms generally exacerbated by nonspecific irritants and temperature extremes. Chest x-ray demonstrated normal cardiac silhouette and clear lung fields.<br><br>Suggested trial of Singular, trial of oral methylxanthines, active exercise program and weight reduction diet, absolute discontinuation of tobacco use, attention to environmental factors. Given leave from work: 5.18–25.01. (Tr. 249–53). |

| DATE | MEDICAL PROVIDER | DIAGNOSIS, PROCEDURE, TREATMENT, FINDINGS, NOTES, ETC. |
|---|---|---|
| 5.24.01 | Mercy Medical Center—Dr. James H. Boddicker | Pulmonary function test performed. Interpretation: normal lung volumes; expiratory flow reduction; decreased effusion capacity prior to spirometry. Possibility of anemia, pulmonary vascular disease, or early restrictive obstructive lung disease raised by results. (Tr. 181). |
| 5.25.01 | Internists, P.C.—Dr. Darrell Dennis | Called about returning to work; stated didn't "feel up to it." (Tr. 249). |
| 5.29.01 | Internists, P.C.—Dr. Darrell Dennis | Pulmonary function tests consistent with mild obstructive airway abnormality. Proscribed Prednisone, Singular, in addition to pre-existing Flovent prescription. Pulmonary symptomatology problematic. Medical excuse from employment extended pending clinical course. (Tr. 249). |
| 6.5.01 | Internists, P.C.—Dr. Darrell Dennis | Complained of continued chest pressure, heart pounding, tightness, and exhaustion. Scheduled pulmonary exercise test. (Tr. 248). |
| 6.26.01 | Internists, P.C.—Dr. Darrell Dennis | Pulmonary symptomatology somewhat out of proportion to objective evidence of obstructive airway disease. Given pulmonary exercise test; demonstrated normal cardiovascular response to exercise. Baseline obstructive airway abnormality present, but didn't change following exercise. Component of deconditioning present. (Tr. 247–48). |

| DATE | MEDICAL PROVIDER | DIAGNOSIS, PROCEDURE, TREATMENT, FINDINGS, NOTES, ETC. |
|---|---|---|
| 7.17.01 | Internists, P.C.—Dr. Darrell Dennis | Continued treatment of obstructive airway disease. Modification of medical therapy since last evaluation, including initiation of Singular, Proventil inhaler, and Duratuss. Some improvement in pulmonary symptoms, but remains problematic. Fair air movement with symmetric expansion. Auscultation remarkable for diminished breath sounds without wheezes, rubs, or evidence of consolidation. Pulmonary symptoms problematic despite aggressive medical therapy. Dyspnea related to obesity and deconditioning. Active exercise and weight reduction diet recommended in addition to absolute discontinuation of tobacco use. (Tr. 245–46). |
| 8.6.01 | Dr. Richard L. Zeaske (allergist) | Treated for cough, itchy, burning, and mattering eyes. Diagnosed with allergic rhinitis/conjunctivitis. Prescribed Gentamicin eye drops. (Tr. 201–02). |
| 9.24.01 | Internists, P.C.—Dr. Darrell Dennis | Follow-up evaluation of obstructive airway disease. Overall improvement in pulmonary symptomatology noted. Dyspnea problematic. Cardiovascular examination normal. Pulmonary examination showed fair air movement with symmetric expansion. Auscultation remarkable for diminished breath sounds without rales, wheezes, rubs or evidence of consolidation. Obstructive airway disease improved since last evaluation, but remains problematic. Elected to proceed with oral methylxanthines. Dyspnea related to obesity and deconditioning. Importance of "absolute discontinuation of tobacco use was again addressed." Active exercise program and weight reduction diet recommended, as well as absolute discontinuation of tobacco use. (Tr. 244–45). |
| 10.3.01 | Internists, P.C.—Dr. Darrell Dennis | Called and said she is off Singular. Felt better when taking it. (Tr. 272). |

| DATE | MEDICAL PROVIDER | DIAGNOSIS, PROCEDURE, TREATMENT, FINDINGS, NOTES, ETC. |
|---|---|---|
| 10.12.01 | Dr. Kenneth Cearlock | Treated for asthma problems attributed to molds and rain. Recently refilled prescription for Tranxene for anxiety control. Previously on Xanax and Lorazepam. Anxiety determined to be more situational; no prolonged anxiety as far as generalized anxiety disorder. No exam done. (Tr. 221). |
| 12.20.01 | Internists, P.C.—Dr. Darrell Dennis | Treated for heartburn, indigestion, coughing, wheezing, and chest tightness and pressure. (Tr. 243). |
| 1.8.02 | Internists, P.C.—Dr. Darrell Dennis | Presented for follow-up evaluation of obstructive airway disease. Pulmonary symptomatology variably problematic, although less so over past several days. Required burst and taper of oral steroid therapy initiated on 12.20.01. Occasional cough without significant or purulent sputum production. Symptomatology typically exacerbated by exposure to nonspecific irritants such as cold air and odors. Dyspepsia markedly improved with Aciphex. Cardiovascular exam normal. Pulmonary exam revealed good air flow with symmetric expansion. Lungs are clear to auscultation and percussion.<br><br>Therapeutic options somewhat limited for treatment of obstructive airway disorder. Dyspnea may be related to obesity and deconditioning. Importance of discontinuation of tobacco use again addressed. Active exercise and weight reduction program suggested. (Tr. 270–71). |
| 2.14.02 | Internists, P.C.—Dr. Darrell Dennis | Complained of waking up every hour on the hour during night. Also noticed headaches. Thought she may be worse on increased dose of Theophylline. Told Dr. Dennis she was denied Social Security Disability. (Tr. 269). |
| 4.19.02 | Internists, P.C.—Dr. Darrell Dennis | Complained of chest tightness all across chest w/ some wheezing noted. States she is unable to walk like she had been. Using Albuterol. Feels bloated in chest. (Tr. 269). |

| DATE | MEDICAL PROVIDER | DIAGNOSIS, PROCEDURE, TREATMENT, FINDINGS, NOTES, ETC. |
| --- | --- | --- |
| 4.24.02 | Internists, P.C.—Dr. Darrell Dennis | Presented for follow-up evaluation of her obstructive airway disease. Pulmonary symptomatology has remained problematic. Currently on burst and taper of oral steroid therapy. Minimal improvement in symptomatology noted. Continued significant dyspnea with relatively minimal exertion with continued chest tightness without cough, purulent sputum production, hemoptysis, fever, chills or rigors. Patient stated she had problems even with conversation. General exam showed obese white female with a weight of 215 pounds, blood pressure 120/86, and heart rate of 100. Cardiovascular exam normal. Pulmonary exam reveals fair air movement with symmetric expansion. Auscultation remarkable for diminished breath sounds without wheezes, rubs, or evidence of consolidation.<br><br>Obstructive airway disease remains problematic in spite of very aggressive medical therapy. Elected to proceed with nebulized beta agonists. Noted that patient's symptomatology markedly out of proportion with objective evidence for distress or disease. Importance of discontinuation of tobacco use discussed. Depression/anxiety appears problematic. Active exercise and weight reduction program suggested. (Tr. 268–69). |
| 9.20.02 | Internists, P.C.—Dr. Darrell Dennis | Patient called, complained of shortness of breath for past couple of weeks. Feels like she is suffocating. Worse with exertion. Most comfortable when sleeping. Also reports weakness of arms and legs. Reports cough with purulent sputum production. (Tr. 317). |

| DATE | MEDICAL PROVIDER | DIAGNOSIS, PROCEDURE, TREATMENT, FINDINGS, NOTES, ETC. |
|---|---|---|
| 10.4.02 | Internists, P.C.—Dr. Darrell Dennis | Pulmonary Residual Function Capacity Questionnaire Returned. First evaluated on 5.18.01. Most recent evaluation 8.22.02. Patient evaluated every three months. Obstructive airway disease (bronchial asthma), chronic tobacco use, and intermittent lower respiratory tract infections noted. Physical examination and symptomatology consistent with obstructive airway disease. Problem primarily chronic dyspnea. Symptomatology somewhat out of proportion to objective evidence for disease. Obstructive airway disease represents permanent medical problem. Would not in itself preclude employment. Patient could continuously sit without problems. Ability to stand may be limited depending on environmental factors. No idea of maximum duration of patient's ability to sit or stand in an 8 hour work day. History of CVA/TIA, chronic depression/anxiety, and obesity. (Tr. 293). |
| 12.2.02 | Mercy Hospital—Dr. Chad Abernathy | Presented for low back pain for past month. Severe right L3 radiculopathy secondary to right L3-4 far lateral disc extrusion found. Surgery suggested. (Tr. 300). |
| 12.3.02 | Mercy Hospital—Dr. Chad Abernathy | Surgery to repair ruptured disc. (Tr. 126, 296). |
| 12.10.02 | Internists, P.C.—Dr. Darrell Dennis | Treated for asthma. Prescribed Biaxin XL for possible pneumonia. (Tr. 126). |

| DATE | MEDICAL PROVIDER | DIAGNOSIS, PROCEDURE, TREATMENT, FINDINGS, NOTES, ETC. |
|---|---|---|
| 12.13.02 | Internists, P.C.—Dr. Darrell Dennis | Presented for follow-up evaluation of obstructive airway disease. Pulmonary symptomatology remained stable, but still problematic. Continued dyspnea on exertion with variable cough and sputum production. General exam revealed moderately overweight woman. Cardiovascular exam normal. Pulmonary exam revealed fair air movement. Auscultation remarkable for clear breath sounds without wheezes, rubs, or evidence of consolidation.<br><br>Elected to continue current treatment for obstructive airway disease. Importance of discontinuation of tobacco use stressed. Course complicated by recurrent bronchitis manifested by increased cough and sputum production. Blood pressure under inadequate control. (Tr. 315). |
| 12.13.02 | Mercy Hospital—Dr. Chad Abernathy | Surgery staples removed. Patient declined physical therapy and chose to leave future appointments open-ended because of success of recovery. (Tr. 126). |
| 12.17.02 | Mercy Womens' Center | Mammogram and bone density tests performed. Bone density results consistent with Osteoporosis. Patient at high risk for fracture. Therapeutic intervention to reverse or slow bone loss should be considered (Tr. 126, 298). |
| 1.6.03 | Dr. Chad Abernathey | Follow-up from 12.3.02 surgery. Loritab prescribed for pain. Physical therapy declined. (Tr. 125). |
| 1.16.03 | Mercy Hospital—Dr. S. Griffith | Treated in emergency room: right leg gave out and Ms. Tighe fell backwards, hitting head and back. CT performed. (Tr. 125). |

| DATE | MEDICAL PROVIDER | DIAGNOSIS, PROCEDURE, TREATMENT, FINDINGS, NOTES, ETC. |
|---|---|---|
| 3.5.03 | Respiratory and Critical Care—Dr. Darrell Dennis | Presented for evaluation of obstructive airway disease. Cardiovascular exam unremarkable. Pulmonary exam revealed fair air movement with symmetric expansion. Auscultation remarkable for rhonchi without wheezes or rubs. Obstructive airway disease remains stable, though still problematic. Importance of discontinuation of tobacco use again stressed. Course complicated by persistent back problems. (Tr. 325–26). |
| 3.10–17.03 | Linn County Physical Therapy | Therapy for lower back and right leg for 12.3.02 surgery. (Tr. 124). |
| 3.26.03 | Dr. Kenneth Cearlock | Right thigh weakness, atrophy. Bloodwork performed by Weland Lab. (Tr. 124). |
| 3.31.03 | Dr. Richard L. Zeaske (allergist) | Treated for allergies/asthma. Pulmonary tests performed. (Tr. 124). |
| 4.3.03 | Dr. Kenneth Cearlock | Treated for continued right thigh weakness and leukocytosis. Some cough, congestion, nasal drainage present. Tried to decrease smoking. Chest x-ray showed some interstitial lung disease. Heart exam unremarkable. Proscribed Zithromax. (Tr. 331). |
| 4.21.03 | Erskine Advanced Imaging Center | Dual phase contrast enhanced abdominal CT performed. Lung bases clear. Peripheral low attenuation lesion, right hepatic lobe as described above. Prior history of cirrhosis of the liver noted. (Tr. 309). |
| 4.22.03 | Dr. Kenneth Cearlock | Treated for asthmatic bronchitis. Four to five days of cough, cold. Throat erythematous in posterior pharynx. Nose patent, erythematous w/ yellowish drainage. Sinuses mildly tender. Neck supple. Lungs revealed diffuse wheezing, rhonchi. (Tr. 330). |
| 4.24.03 | Dr. Kenneth Cearlock | 4.22 symptoms unchanged. (Tr. 330). |
| 4.29.03 | Dr. Kenneth Cearlock | Cough unchanged, but no wheezing. (Tr. 330). |

| DATE | MEDICAL PROVIDER | DIAGNOSIS, PROCEDURE, TREATMENT, FINDINGS, NOTES, ETC. |
|---|---|---|
| 5.7.03 | Dr. Chirantan Ghosh | Follow-up on bone marrow; blood work performed. (Tr. 123). |
| 5.13.03 | Mercy Hospital | MRI of liver performed. (Tr. 123). |
| 7.24.03 | Internists, P.C.—Dr. Darrell Dennis | Check-up. Medication changed from "theo" to uniphyl. (Tr. 122). |
| 7.24.03 | Respiratory and Critical Care Associates— Dr. Jennifer L. Lickteig | Presented for evaluation of obstructive airway disease. Cardiovascular exam remarkable for 2/6 systolic murmur, right and left upper sternal border. Lungs clear to auscultation bilaterally without wheezing or rhonchi. Symmetric chest expansion noted. Good air movement throughout. Patient remains stable, though pulmonary symptoms remain problematic. Tobacco cessation encouraged. Noted tobacco use previously addressed. (Tr. 323–24). |
| 8.22.03 | Dr. Kristin Barnette | Performed EKG. Referred to Mercy emergency room. (Tr. 121). |
| 8.22.03 | Mercy Hospital—Dr. Mark Pospisil | Treated in emergency room for shortness of breath, chest pressure, high blood pressure, and a rattle in lungs. X-rays, bloodwork, EKG, and breathing tests performed. Prednisone and Zithromax prescribed. (Tr. 121). |
| 8.26.03 | Dr. Kenneth Cearlock | Treated for asthma, bronchospasm, and acute bronchitis. Given a prednisone injection; prescription increased to 60mg. (Tr. 121, 329). |
| 9.4.03 | Dr. Kenneth Cearlock | Treated for shortness of breath and pressure on chest. Patient stated that she felt more than 50% better than last visit, but any exertion results in chest tightness and pressure. Recommended cardiology tests to rule out cardiac etiology. (Tr. 120, 328). |
| 9.5.03 9.8.03 | Mercy Hospital—Dr. Keith Kopek | Cardiology tests performed: nuclear stress test; echocardiogram. (Tr. 120). |

| DATE | MEDICAL PROVIDER | DIAGNOSIS, PROCEDURE, TREATMENT, FINDINGS, NOTES, ETC. |
|---|---|---|
| 9.11.03 | Mercy Hospital—Dr. Keith Kopek | Cardiology treatment: hypertrophic cardiomyopathy medication; cardiac catheterization scheduled for 10.3.03. Physical examination revealed overweight woman who is awake, alert, orientated, and in no distress. Pupils are equal, round, and reactive to light. Estraocular movements are intact. Neck veins are not distended. Carotid upstrokes are good. Lungs clear. Cardiac exam reveals normal rate and rhythm. Smokes one pack of cigarettes per day and drinks one pot of coffee per day. Etiology of shortness of breath and chest tightness unclear. Could be asthma, hypertrophic cardiomyopathy, possible coronary disease, or combination thereof. Equivocal nuclear stress test. (Tr. 120, 313). |
| 10.3.03 | Respiratory and Critical Care Associates—Dr. Jennifer L. Lickteig | Presented for evaluation of obstructive airway disease. Was in emergency room in late August for difficulty breathing. No chest pains or new dyspnea on exertion. Obstructive airway disease remains stable. Treated for upper respiratory infection with Zithromax. Encouraged cessation of tobacco use. (Tr. 320–21). |
| 10.3.03 | Mercy Hospital—Dr. Keith Kopek | Cardiac catheterization. Normal left ventricular size and systolic function. No evidence of left ventricular outflow tract obstruction. No occlusive coronary artery disease. (Tr. 137, 295). |
| 10.31.03 | Internists, P.C.—Dr. Darrell Dennis | Treated for asthma and respiratory infection. Prescribed Zithromax. (Tr. 137). |
| 11.6.03 | Dr. Chirantan Ghosh | Follow-up (no specifics given). (Tr. 138). |
| 11.7.03 | Dr. Keith Kopek | Follow-up (no specifics given). (Tr. 138). |
| 12.29.03 | Dr. Kenneth Cearlock | Treated for asthma and bronchitis. Prescribed Zithromax. (Tr. 139). |
| 12.31.03 | Erskine Radiology Center | Chest x-ray. Checked for pneumonia. (Tr. 139). |

| DATE | MEDICAL PROVIDER | DIAGNOSIS, PROCEDURE, TREATMENT, FINDINGS, NOTES, ETC. |
|------|------------------|---------------------------------------------------------|
| 3.17.04 | Respiratory and Critical Care Associates— Dr. Jennifer L. Lickteig | Presented for re-check of obstructive airway disease and cough. Reports cough developed over previous two months. More short of breath, primarily with exertion. No acute distress. Pulmonary exam reveals fair air movement bilaterally with symmetric expansion. No wheezing. Intermittent rhonchi that clear with cough noted. Chronic obstructive pulmonary disease diagnosed. Some deterioration in patient's pulmonary mechanics. Cardiovascular status stable. (Tr. 339). |

At the hearing before the ALJ on March 25, 2004, Ms. Tighe testified that she was born on April 18, 1953, and completed school through the eleventh grade, but did not graduate. (Tr. 347–48). She has not obtained her GED or pursued any further education. (Tr. 347–48). Ms. Tighe claims that her pulmonary problems caused her to stop working in May of 2001. (Tr. 350). Ms. Tighe stated that leading up to the time she allegedly became disabled, she continuously suffered from sinus infections, bronchitis, and respiratory problems. (Tr. 348). Ms. Tighe testified that as her breathing difficulties increased, she was referred to an ear, nose, and throat specialist and an allergist. (Tr. 349). The allergist, Dr. Richard L. Zeaske, diagnosed Ms. Tighe with asthma and allergies to dust, mold, and cats. (Tr. 349). Throughout this period, Ms. Tighe was continually taking medication for her various ailments. (Tr. 348–50). In March of 2001, upon her return from a trip to Arizona, Ms. Tighe testified her breathing difficulties increased until she stopped working in May of 2001. (Tr. 350).

At the hearing, Ms. Tighe testified that she had surgery to repair two ruptured discs in her back that have caused continuing problems with her right leg. (Tr. 350). These problems have required Ms. Tighe to occasionally rely on a cane. (Tr. 351). Ms. Tighe also testified that she occasionally relies on a walker when outside of her home. (Tr. 351).

However, Ms. Tighe testified that she did not rely on the assistance of either the cane or the walker when at home. (Tr. 352).

Ms. Tighe also testified that she has had a history of medical problems dating to 1978. (Tr. 352). In 1978, Ms. Tighe had gallbladder surgery. (Tr. 352). Complications ensued and Ms. Tighe had a second surgery in 1980 at which time a metal mesh was implanted to help strengthen her abdominal wall. (Tr. 352). During this operation, surgical tubing was accidently left in Ms. Tighe's abdomen. (Tr. 352). As a result, Ms. Tighe endured numerous infections and abscesses. (Tr. 352). The tubing was found and removed in 1995. (Tr. 353). However, the abdominal mesh was also removed during the 1995 operation, limiting Ms. Tighe's ability to bend, stoop, kneel, squat, or lift more than thirty pounds. (Tr. 141, 353).

Ms. Tighe testified that since she has quit working, she is "pretty much homebound." (Tr. 354). She testified that when she attempts to leave her house, her breathing difficulties increase. (Tr. 354). Ms. Tighe could not identify any particular causes that triggered her breathing difficulties. (Tr. 354). When asked by her attorney during the hearing if she had experienced any breathing difficulties upon entering the building where the hearing was held, Ms. Tighe stated she had and that she somehow determined it was triggered by a computer printer. (Tr. 354). Ms. Tighe also testified that she had sought emergency care numerous times as a result of her breathing difficulties. (Tr. 349, 355).

Ms. Tighe testified that her daily activities since she stopped working are mainly sedentary. (Tr. 357). However, when asked by the ALJ if any of her medical difficulties required her to make special arrangements at her home, Ms. Tighe replied no, with the exception of an air purifier "that runs 24 hours a day," and her need to have "air circulation" when sleeping or in the car. (Tr. 357). Ms. Tighe testified that she had never been on oxygen, nor could remember her doctors discussing the subject with her.

(Tr. 357).  Ms. Tighe also testified that she suffers from situational anxiety for which she takes Tranxene.  (Tr. 358).

Ms. Tighe testified that she has never worked a full-time job and that her yearly income was between approximately $4,000 and $6,000, although various ailments precluded her from working in the mid-1990's.  (Tr. 361).  Ms. Tighe also testified that she continues to smoke approximately one pack of cigarettes per day.  (Tr. 362).  Despite her smoking habit, Ms. Tighe testified that she is very sensitive to strong odors, perfumes, etc., all of which, according to Ms. Tighe, trigger her breathing difficulties.  (Tr. 354, 363).  When asked by the ALJ how long she could be on her feet prior to her recent onslaught of breathing difficulties, Ms. Tighe stated that she can currently stand for fifteen minutes to one half hour before having to sit.  (Tr. 363).  Ms. Tighe also stated that she generally does not sit for more than an hour or so without getting up and "mov[ing] around a little."  (Tr. 363).  When asked again about her abilities prior to her claimed disability, Ms. Tighe stated she could not remember.  (Tr. 363).

Ms. Tighe's most recent employment prior to her claimed disability included general cleaning, dusting, and vacuuming at various department stores and office buildings.  (Tr. 364).  Prior to her claimed disability, Ms. Tighe was working three hours, four evenings per week.  (Tr. 349).  Her husband is a truck driver and they have one adult son who does not live with them.  (Tr. 364).  Ms. Tighe has not driven a car since her back surgery and does not leave her home without her husband.  (Tr. 360).  She carries a portable Nebulizer with her when she travels.  (Tr. 360–61).

Vocational expert Marian Jacobs also testified at the March 25, 2004, hearing.  (Tr. 366).  Ms. Jacobs testified that Ms. Tighe's current ailments would preclude her from returning to her former cleaning work, but that there were other jobs that someone with Ms. Tighe's limitations could perform.  (Tr. 366–67).  These jobs included sedentary, unskilled positions, such as a cutter and paster of press clippings, surveillance system

monitor, or bottle inspector.[1]  (Tr. 367).  However, Ms. Jacobs testified that Ms. Tighe's alleged inability to stand or walk no more than a total of two hours and her need to take two or more unscheduled breaks would not make Ms. Tighe competitively employable. (Tr. 367).  Ms. Jacobs testified that it was not the various environmental factors Ms. Tighe identified during the hearing that would preclude her from competitive employment, but her need, as stated by Dr. Darrell Dennis, to miss more than three days of work per month.  (Tr. 368).

## II.  CONCLUSIONS OF LAW

### A.  Scope of Review

In order for the court to affirm the Administrative Law Judge's (ALJ) findings of fact, those findings must be supported by substantial evidence appearing in the record as a whole.  See Lochner v. Sullivan, 968 F.2d 725, 727 (8th Cir. 1992); Cruse v. Bowen, 867 F.2d 1183, 1184 (8th Cir. 1989).  Substantial evidence is more than a mere scintilla. It means relevant evidence a reasonable mind might accept as adequate to support a conclusion.  Richardson v. Perales, 402 U.S. 389, 401 (1997); Cruse, 867 F.2d at 1184; Taylor v. Bowen, 805 F.2d 329, 331 (8th Cir. 1986).  The court must take into account evidence which fairly detracts from the ALJ's findings.  Cruse, 867 F.2d at 1184; Hall v. Bowen, 830 F.2d 906, 911 (8th Cir. 1987).  Substantial evidence requires "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence."  Cruse, 867 F.2d at 1184 (quoting Consolo v. Fed. Mar. Comm'n, 383 U.S. 607, 620 (1966)).  The court must consider the weight of the

---

[1] Ms. Jacobs testified that there are approximately 400 persons employed as cutters and pasters of press clippings in Iowa and approximately 40,000 so employed in the United States.  (Tr. 367).  She also testified that there are approximately 140 persons employed as surveillance system monitors in Iowa and approximately 13,000 so employed in the United States.  (Tr. 367).  She testified that there are approxiately 1200 persons employed as bottle inspectors in Iowa and 120,000 so employed in the United States.  (Tr. 367).

evidence appearing in the record and apply a balancing test to contradictory evidence. Gunnels v. Bowen, 867 F.2d 1121, 1124 (8th Cir. 1989); Gavin v. Heckler, 811 F.2d 1195, 1199 (8th Cir. 1987).

B.  ALJ's Determination of Disability

Determining whether a claimant is disabled is evaluated by a five-step process.  See 20 C.F.R. § 404.1520(a)–(f); Bowen v. Yuckert, 482 U.S. 137, 140 (1987).

The five steps are:

(1)     If the claimant is engaged in substantial gainful activity, disability benefits are denied.

(2)     If the claimant is not engaged in substantial gainful activity, her medical condition is evaluated to determine whether her impairment, or combination of impairments, is medically severe.  If the impairment is not severe, benefits are denied.

(3)     If the impairment is severe, it is compared with the listed impairments the Secretary acknowledges as precluding substantial gainful activity.  If the impairment is equivalent to one of the listed impairments, the claimant is disabled.

(4)     If there is no conclusive determination of severe impairment, then the Secretary determines whether the claimant is prevented from performing the work she performed in the past.  If the claimant is able to perform her previous work, she is not disabled.

(5)     If the claimant cannot do her previous work, the Secretary must determine whether she is able to perform other work in the national economy given her age, education, and work experience.

Trenary v. Bowen, 898 F.2d 1361, 1364 n.3 (8th Cir. 1990) (citing Yuckert, 482 U.S. at 140–42); 20 C.F.R. § 404.1520(a)–(f).

"To establish a disability claim, the claimant bears the initial burden of proof to show that he is unable to perform his past relevant work."  Frankl v. Shalala, 47 F.3d 935, 937 (8th Cir. 1995) (citing Reed v. Sullivan, 988 F.2d 812, 815 (8th Cir. 1993)).  If the claimant meets this burden, the burden of proof then shifts to the Commissioner of Social

Security to demonstrate that the claimant retains the physical residual functional capacity (RFC) to perform a significant number of other jobs in the national economy that are consistent with the claimant's impairments and vocational factors such as age, education and work experience. Id.

Under the first step of the analysis, the ALJ determined that Ms. Tighe had not engaged in substantial gainful employment since November 14, 2000. (Tr. 16). At the second step, the ALJ determined that Ms. Tighe had the following impairments: asthma, hypertension, and a history of post-surgery abdominal herniae. (Tr. 19). At the third step, the ALJ determined that Ms. Tighe's impairments were not equivalent to one of the listed impairments. (Tr. 19). At the fourth and fifth steps, the ALJ determined that Ms. Tighe is unable to perform her past relevant work (Tr. 20), but is able to make a vocational adjustment to work which exists in significant numbers in the national economy. (Tr. 22). Thus, the ALJ concluded that Ms. Tighe is not "disabled." (Tr. 22).

## C. Credibility Determination

Ms. Tighe claims that the ALJ's analysis under the standard set forth by the United States Court of Appeals for the Eighth Circuit in Polaski v. Heckler, 739 F.2d 1320, 1321–22 (8th Cir. 1984), is flawed because the ALJ failed to identify inconsistencies in the record as a whole and to consider factors favoring the claimant's credibility. Ms. Tighe also claims that the ALJ's analysis is inconsistent with a statement the ALJ made at the hearing: "I have no reason to disbelieve her [Ms. Tighe]." (Tr. 365). Ms. Tighe claims that the ALJ's determination of her credibility at the hearing was correct and that his written decision denying her disability benefits runs contrary to the record as a whole and his statement.

The Commissioner rebuts Ms. Tighe's claims, stating that the ALJ properly assessed Ms. Tighe's credibility by relying on inconsistencies between Ms. Tighe's subjective complaints and the objective evidence in her medical records. Thus, the

Commissioner argues that the ALJ's determination that Ms. Tighe is not disabled is supported by substantial evidence.

Relying on the record as a whole and the testimony of the vocational expert, Ms. Jacobs, the ALJ determined that Ms. Tighe's case satisfied the fourth step of the Polaski standard because she could not return to the work she had previously done. Thus, Ms. Tighe's argument, and the Commissioner's resistance, are premised on the ALJ's determination that Ms. Tighe could make a vocational adjustment to a field of work which exists in significant numbers in the national economy. The ALJ, relying on the record and Ms. Jacob's testimony, determined that various inconsistencies between Ms. Tighe's subjective complaints and her medical records rendered her claim not credible.

When evaluating the credibility of a claimant's subjective complaints, the ALJ may not disregard complaints "solely because the objective medical evidence does not fully support them." Polaski, 739 F.2d at 1322. Furthermore, "[t]he [ALJ] is not free to accept or reject the claimant's subjective complaints solely on the basis of personal observations. Subjective complaints may be discounted if there are inconsistencies in the evidence as a whole." Id. In evaluating a claimant's subjective impairments, the following factors are considered: (1) the applicant's daily activities; (2) the duration, frequency, and intensity of pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of medication; and (5) functional restrictions. Id. at 1321–22. Subjective complaints may be discounted if inconsistencies exist in the evidence as a whole. Hinchey v. Shalala, 29 F.3d 428, 432 (8th Cir. 1994); Woolf v. Shalala, 3 F.3d 1210, 1213 (8th Cir. 1993). Where an ALJ seriously considers, but for good reasons explicitly discredits a plaintiff's subjective complaints, the court will not disturb the ALJ's credibility determination. Johnson v. Apfel, 240 F.3d 1145, 1147 (8th Cir. 2001).

In assessing Ms. Tighe's credibility, the ALJ found her allegations less than fully credible and accepted her claims insofar as they were consistent with the determination that

Ms. Tighe is not disabled. (Tr. 21). In so doing, the ALJ found that: (1) Ms. Tighe's activities of daily living "suggest a residual capacity at odds with a finding of disability" (Tr. 19); (2) Ms. Tighe's failure to diligently seek medical care suggests tolerable symptomatology that is not as severe as the subjective symptoms reported (Tr. 19); (3) Ms. Tighe has continued to smoke approximately one pack of cigarettes per day despite her pulmonary difficulties (Tr. 16, 18); (4) Ms. Tighe has failed to diligently seek medical care, discontinue tobacco use, and begin a program of exercise and weight reduction despite the repeated recommendations of her health care providers (Tr. 16, 18); and (5) although Ms. Tighe would have to avoid exposure to temperature extremes, humidity, dust, and fumes, she could do simple, repetitive work (Tr. 22).

The ALJ was careful to note that Ms. Tighe's ability to engage in self-care activities, perform household chores, and prepare meals was not dispositive. (Tr. 19). The ALJ merely suggested that these activities are at odds "with a finding of disability." (Tr. 19). However, although Ms. Tighe stated during the hearing that she had not driven a car since her back surgery and does not go to the grocery store without her husband, she failed to mention any activity of her daily life that she engaged in prior to the date of her alleged disability that she no longer can undertake. (Tr. 360). The Eighth Circuit has held that "a claimant need not prove that he or she is bedridden or completely helpless to be found disabled." Thomas v. Sullivan, 876 F.2d 666, 669 (8th Cir. 1989); see also Keller v. Shalala, 26 F.3d 856, 859 (8th Cir. 1994) (finding it erroneous to discredit a claimant's subjective complaints of pain based on her daily activities which consisted of watching television, taking care of her dogs, and doing household chores, which the claimant testified she could not do when she was suffering from a disabling headache); Forehand v. Barnhart, 364 F.3d 984, 988 (8th Cir. 2004) ("We have long stated that to determine whether a claimant has the residual function capacity necessary to be able to work we look to whether she has 'the ability to perform the requisite physical acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real

world.'") (citing <u>McCoy v. Schweiker</u>, 683 F.2d 1138, 1147 (8th Cir. 1982) (en banc)). Although Ms. Tighe's daily activities are not dispositive, they do lend credence to the ALJ's determination because of the similarities between the duties required of her prior position and her continuing ability to undertake similar duties in her home. However, the ALJ does not use this evidence to suggest, contrary to the recommendation of Ms. Jacobs, that Ms. Tighe could return to her prior occupation. Her continuing ability to complete these duties at home only suggests she may have the ability to do lesser tasks outside of her home.

The ALJ found three periods where Ms. Tighe seemingly failed to seek medical treatment for her ailments: July 1 to December 17, 2000; December 20, 2000, to March 4, 2001; and June 19 to September 23, 2001. (Tr. 19). The ALJ claimed that these periods of non-treatment during a period in which Ms. Tighe was continually claiming a disability question the credibility of her claims and "suggest tolerable symptomatology." (Tr. 19). The ALJ's statements on this issue are overstated at best.

In regards to the first period, July 1 to December 17, 2000, the ALJ is correct. Other than visits to MercyCare North on October 18 and October 23, 2000, for eye irritation, the record does not show any evidence that Ms. Tighe sought medical treatment for the ailments allegedly causing her disability. The ALJ's assertions regarding the second period, December 20, 2000, to March 4, 2001, are more problematic. Ms. Tighe's medical records indicate that she visited MercyCare North on February 25, 2001, and was seen by Dr. Jennifer Carney. (Tr. 175). Ms. Tighe was treated for a sore throat, ear pressure, congestion, and drainage. (Tr. 175). Ms. Tighe also visited her family physician, Dr. Kenneth Cearlock, on February 27, 2001, to follow up on her February 25 visit to MercyCare North. (Tr. 222). Ms. Tighe was diagnosed with sinusitis and conjunctivitis. (Tr. 222). Furthermore, Ms. Tighe saw Dr. Cearlock on January 17, 2001, concerning her anxiety problems. (Tr. 222). This period of time does not show any evidence of Ms. Tighe's failure to seek adequate medical treatment.

Likewise, the ALJ's assertions concerning the third period, June 19, 2001, to September 23, 2001, are problematic. Despite the ALJ's assertions, Ms. Tighe's medical records indicate that she sought treatment for her pulmonary problems on June 26, 2001, and July 17, 2001, from Dr. Dennis (Tr. 245–48). Ms. Tighe also saw her allergist, Dr. Zeaske, on August 6, 2001. (Tr. 201–02). One month does not represent a significant break in medical treatment and is completely in line with Ms. Tighe's entire course of recorded treatment. The ALJ's reasoning regarding Ms. Tighe's course of treatment is flawed and does not support his assertion that Ms. Tighe's medical record "suggests tolerable symptomatology."

Although the ALJ's assertions regarding Ms. Tighe's course of medical treatment are flawed, Ms. Tighe's continued tobacco use is extremely troublesome. The Eighth Circuit has declined to find that respiratory problems rise to the level of disability when a claimant refuses to stop smoking. See Kisling v. Chater, 105 F.3d 1255, 1257 (8th Cir. 1997) (holding that the claimant's failure to stop smoking despite continual recommendations by health care professionals did not support a finding of disability). In doing so, the Eighth Circuit stated that "[f]ailure to follow a prescribed course of remedial treatment without good reason is grounds for denying an application for benefits." Id. (quoting Roth v. Shalala, 45 F.3d 279, 282 (8th Cir. 1995); 20 C.F.R. § 416.930(b)); see also Kelley v. Callahan, 133 F.3d 583, 589 (8th Cir. 1998) (reaffirming Kisling, but declining to extend Kisling's reasoning to cases where there is no evidence the smoking habit would have any effect on the alleged musculoskeletal disability).

Ms. Tighe stated at the hearing before the ALJ that she continues to smoke approximately one pack of cigarettes per day despite her pulmonary problems. (Tr. 362). This court also notes that Ms. Tighe's medical records indicate that she has smoked for at least thirty years. (Tr. 249–53). The ALJ noted Ms. Tighe's "history of chronic and continued tobacco abuse" in his written opinion. (Tr. 18). This court counts, at minimum, thirteen instances involving at least five different doctors since 1998 where

Ms. Tighe was told she needed to completely or absolutely cease her tobacco use.[2] In only two instances has she indicated any willingness to do so: during a visit to Dr. Cearlock on June 20, 2000 (Tr. 223); and during the hearing before the ALJ (Tr. 362). In an April 3, 2003, visit to Dr. Cearlock, Ms. Tighe indicated that she had tried to decrease the number of cigarettes she smoked, but made no mention of quitting. (Tr. 331). The record is completely devoid of any evidence that Ms. Tighe has attempted to seek treatment for her tobacco use or has in anyway attempted to cease her tobacco use. This court believes that the ALJ could properly discount Ms. Tighe's claims of ultra-sensitivity to various odors given her continued tobacco use. Her own doctor, Dr. Dennis, in two letters regarding her disability claim, dated January 20, 2002, and June 13, 2002, respectively, states that Ms. Tighe should avoid all exposure to smoke of any form. (Tr. 240, 265). It is difficult for this court to find Ms. Tighe is entitled to disability benefits because she is supposed to avoid environments containing known respiratory irritants when she freely admits to smoking one pack of cigarettes per day in her own home. It is plainly obvious to even the most casual observer that Ms. Tighe's continued tobacco abuse, against the warnings of various doctors, has aggravated her ailments and fatally injures her claim for disability benefits.

Although not as detrimental to her claim, the record is replete with numerous instances where Ms. Tighe's various doctors have stated that her obesity and lack of

---

[2] Ms. Tighe was told she needed to stop smoking by: Drs. David R. Kobliska and Steven H. Griffith on December 19 and 20, 1999 (Tr. 151); Dr. Cearlock on June 20, 2000 (Tr. 223), and April 3, 2003 (Tr. 331); Dr. Darrell Dennis on May 18, 2001 (Tr. 249–53), July 17, 2001 (Tr. 245–46), September 24, 2001 (Tr. 244–45), January 8, 2002 (Tr. 270–71), April 24, 2002 (Tr. 268–69), October 4, 2002 (Tr. 293), December 13, 2002 (Tr. 315), and March 5, 2003 (Tr. 325–26); and Dr. Jennifer L. Lickteig on July 24, 2003 (Tr. 323–24), and October 3, 2003 (Tr. 320–21). Ms. Tighe's smoking habit was also noted by: Dr. Kenneth Cearlock on April 6, 1998 (Tr. 237), and August 6, 1998 (Tr. 233); Dr. Richard L. Zeaske on June 30, 2000 (Tr. 211–12); and Dr. Keith Kopek on September 11, 2003 (Tr. 120, 313).

conditioning or physical fitness is a significant contributing factor to her ailments and subsequently suggested an exercise and weight reduction program. These factors were mentioned by Dr. Dennis in his June 13, 2002, letter, where he states Ms. Tighe's ailments "may be in part related to deconditioning and obesity." (Tr. 265). Moreover, the record indicates Dr. Dennis made repeated recommendations that Ms. Tighe embark upon a program of exercise and weight reduction.[3] This court believes that although Ms. Tighe's failure to follow Dr. Dennis's repeated recommendations regarding improvement of her physical fitness does not rise to the same level of seriousness as her failure to stop smoking, it represents a further failure to comply with a recommended course of treatment without good reason. See Kisling, 105 F.3d at 1257.

A significant portion of the ALJ's reasoning regarding his denial of Ms. Tighe's claim rests on the determination that although Ms. Tighe's "impairments may create certain pain and discomfort, the record as a whole does not support a finding that the claimant's impairments are as limiting as she alleges." (Tr. 19). Upon a review of the record, this court agrees with this determination.

There are numerous instances in the record that are persuasive on this issue. Perhaps foremost is the aforementioned June 13, 2002, letter by Dr. Dennis. Following a year of treatment and close observation of Ms. Tighe, Dr. Dennis noted, "[t]he patient's [Ms. Tighe] pulmonary symptomatology are felt to be somewhat out of proportion to objective evidence for pulmonary disease." (Tr. 265). After an examination on April 24, 2002, Dr. Dennis noted that Ms. Tighe's symptomatology was "markedly out of proportion" with objective evidence of distress or disease. (Tr. 268–69). This disparity was noted again by Dr. Dennis on October 4, 2002. (Tr. 293). As stated, a disparity

---

[3] Dr. Dennis suggested that Ms. Tighe embark upon a program of exercise and weight reduction during visits on May 18, 2001 (Tr. 249–53), June 26, 2001 (Tr. 247–48), July 17, 2001 (Tr. 245–46), September 24, 2001 (Tr. 244–45), January 8, 2002 (Tr. 270–71), and April 24, 2002 (Tr. 268–69).

between subjective symptomatology and objective medical evidence is not dispositive by itself. However, combined with the above factors, it lends credence to the ALJ's determination.

After considering the weight of the evidence and balancing the factors supporting the ALJ's credibility determination against the factors in support of Ms. Tighe's claim, this court holds that the ALJ's determination that Ms. Tighe's allegations of total inability to work were not fully credible is supported by substantial evidence. The ALJ's denial of Ms. Tighe's application for disability insurance benefits must be affirmed.

Upon the foregoing,

IT IS ORDERED that the determination of the ALJ is affirmed and this matter is dismissed.

July 19, 2005.

JOHN A. JARVEY
Magistrate Judge
UNITED STATES DISTRICT COURT